**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
1160 Battery Street East
Suite 100 - #3425
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294
Email: aapton@zlk.com

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato (SBN 319767)
580 California Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 568-2124
Facsimile: (212) 214-0506
Email: fortunato@bespc.com

*Counsel for Plaintiffs*
*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY EDELMAN, JAYSEN STEVENSON, and CHRISTIAN JACOBSEN, Derivatively on Behalf of CareDx, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> GEORGE BICKERSTAFF, FRED COHEN, CHRISTINE COURNOYER, GRACE E. COLÓN, ANKUR DHINGRA, MICHAEL D. GOLDBERG, WILLIAM HAGSTROM, PETER MAAG, REGINALD SEETO, RALPH SNYDERMAN, ARTHUR A. TORRES, and HANNAH VALANTINE, <br><br> Individual Defendants, <br><br> -and- <br><br> CAREDX, INC., <br><br> Nominal Defendant. | Case No.  3:25-cv-02036-TLT <br><br> **NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, AWARD OF ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARDS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date: June 30, 2026 <br> Hearing Time: 2:00 p.m. <br> Courtroom: 9 – 19th Floor <br> Judge: Hon. Trina L. Thompson |

## TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ................................................................................ 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 2

I.    INTRODUCTION ............................................................................................................... 2

II.   FACTUAL AND PROCEDURAL BACKGROUND......................................................... 4

   A.   Factual Background ................................................................................................... 4

   B.   Procedural Background.............................................................................................. 5

      1.   The Federal Derivative Actions ....................................................................... 5

      2.   The *Burns* Action ............................................................................................. 6

      3.   The Related Securities Class Action................................................................. 6

      4.   Settlement Negotiations, Preliminary Approval .............................................. 6

      5.   Fee Negotiations ............................................................................................... 7

III.  THE CORPORATE GOVERNANCE REFORMS............................................................ 8

IV.   STOCKHOLDERS RECEIVED ADEQUATE NOTICE OF THE SETLEMENT .......... 9

V.    THE SETTLEMENT IS A FAVORABLE RESULT AND SHOULD BE FINALLY APPROVED ...................................................................................................................... 10

   A.   The Substantial Benefits Conferred Upon CareDx Support Final Approval................. 11

   B.   The Difficulty of the Case Supports Final Approval ...................................................... 14

   C.   The Stage of the Proceedings Supports Final Approval ................................................. 15

   D.   The Strength of Plaintiffs' Claims Compared to the Benefits of Settlement Supports Final Approval ................................................................................................................. 16

   E.   The Experience and Views of Counsel Supports Final Approval .................................. 16

   F.   The Reaction of the Company's Stockholders Supports Final Approval ....................... 18

VI.   THE SEPARATELY-NEGOTIATED FEE AND EXPENSE AMOUNT IS REASONABLE AND SHOULD BE APPROVED ........................................................... 19

i

VII.  THE SERVICE AWARDS ARE REASONABLE AND SHOULD BE APPROVED ... 25

VIII. CONCLUSION ................................................................................................. 25

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE
SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Basaraba v. Greenberg*,
2014 WL 12591677 (C.D. Cal. Nov. 10, 2014).......................................................................... 15

*Buccellato v. AT&T Operations, Inc.,*
2011 WL 3348055 (N.D. Cal. June 30, 2011) ........................................................................... 22

*Campbell v. Facebook Inc.*,
2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ................................................................... 21, 25

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005)....................................................................................... 22

*Cunningham v. Cnty. of Los Angeles*,
879 F.2d 481 (9th Cir. 1988) .................................................................................................... 22

*Feuer v. Thompson*,
2013 WL 2950667 (N.D. Cal. 2013) ......................................................................................... 20

*Gantulga v. Aron*,
2023 WL 8720129 (S.D.N.Y.).................................................................................................... 23

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................................................... 10

*Gerwen v. Guarantee Mut. Life Ins. Co.*,
214 F.3d 1041 (9th Cir. 2000) ................................................................................................... 21

*Gilbert v. Perlman*,
C.A. No. 2018-0453-VCG (Del. Ch. Apr. 26, 2022)................................................................. 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 10, 22

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ......................................................................................................... 21

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)................................................................................................................... 19

*Hu v. Baker*,
2025 WL 2419265 (N.D. Cal. Aug. 21, 2025) .......................................................................... 19

*In re Activision Blizzard, Inc. S'holder Litig.*,
124 A.3d 1025 (Del. Ch. 2015)........................................................................................ 11, 15, 17

*In re Align Technology, Inc. Deriv. Litig.*,
Case No. 19-cv-00202-TLT (N.D. Cal.)..................................................................................... 23

*In re AOL Time Warner S'holder Derivative Litig.*,
2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006)............................................................................. 18

*In re Apple Computer, Inc., Derivative Litig.*,
2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ....................................................................... 20, 22

*In re Caremark Int'l Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996).................................................................................................... 14

*In re Cendant Corp., Derivative Action Litig.*,
232 F. Supp. 2d 327 (D.N.J. 2002) ............................................................................................ 25

*In re F5 Networks, Inc. Derivative Litig.*,
2011 WL 13195985 (W.D. Wash. Jan. 6, 2011)......................................................................... 23

*In re First Capital Holdings Corp. Financial Prods.*,
No. MDL 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ..................................................... 20

*In re Google Inc. S'holder Derivative Litig.*,
Case No. 4:11-cv-04248-PJH (N.D. Cal. Jan. 21, 2015)........................................................... 20

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
716 F. App'x 603 (9th Cir. 2017) ............................................................................................... 10

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...................................................................................................... 15

*In re MRV Commc'ns, Inc. Derivative Litig.*,
2013 WL 2897874 (C.D. Cal. June 6, 2013) ........................................................................ 18, 19

*In re NVIDIA Corp. Derivative Litig.*,
2008 WL 5382544 (N.D. Cal. Dec. 22, 2008)...................................................................... 10, 11

*In re Okta, Inc. Stockholder Derivative Litigation*,
Case No. 3:22-cv-07480-SI (N.D. Cal. 2025) ........................................................................... 23

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................................... 16

iv

*In re OSI Sys., Inc. Derivative Litig.*,
  2017 WL 5642304 (C.D. Cal. May 2, 2017) ............................................................... 11, 20, 25

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ...................................................................................... 14

*In re Pfizer Inc. S'holder Derivative Litig.*,
  780 F. Supp. 2d 336 (S.D.N.Y. 2011)....................................................................... 14

*In re Rambus Inc. Derivative Litig.*,
  2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .............................................................. 18

*In re Regulus Therapeutics Inc. Sec. Litig.*,
  2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ............................................................ 17

*In re Southern Company S'holder Derivative Litig.*,
  2022 WL 4545614 (N.D. Ga. June 9, 2022) .............................................................. 23

*In re: Synchrony Financial Derivative Litigation*,
  Case No. 3:19-cv-00130-VAB.................................................................................... 23

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  445 F. Supp. 3d 508 (N.D. Cal. 2020) .................................................................. 10, 23

*In re Zuora, Inc. Derivative Litigation*,
  Case No. 3:19-cv-05701-SI (N.D. Cal. 2023) .......................................................... 23

*Ishak v. WM Tech., Inc.*,
  2025 WL 791270 (C.D. Cal. Mar. 11, 2025)............................................................. 17

*Konits v. Valley Stream Cent. High Sch. Dist.*,
  350 F. App'x 501 (2d Cir. 2009)............................................................................... 21

*Mathur v. Bd. of Trustees of S. Ill. Univ.*,
  317 F.3d 738 (7th Cir. 2003) .................................................................................... 21

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970).............................................................................................. 11, 19

*Moore v. Verb Tech. Co., Inc.*,
  2021 WL 11732976 (C.D. Cal. Mar. 1, 2021)........................................................... 17

*Myers v. MedQuist, Inc.*,
  2009 WL 900787 (D.N.J. Mar 31, 2009)................................................................... 16

v

*Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................... 16

*Navellier v. Sletten*,
   262 F.3d 923 (9th Cir. 2001) ...................................................................................... 18

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................ 10, 14, 16

*Perlmutter v. Intuitive Surgical, Inc.*,
   2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ............................................................... 14

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................. 16, 18

*Rodriguez v. West Publ. Corp.*,
   602 Fed. Appx. 385 (9th Cir. 2015)............................................................................. 21

*Sadowska v. Volkswagen Group of America*, *Inc.*,
   2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ............................................................ 21

*Sauby v. City of Fargo*,
   2009 WL 2168942 (D.N.D. July 16, 2009) ................................................................. 25

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...................................................................................... 25

*Stetson v. Grissom*,
   821 F.3d 1157 (9th Cir. 2016) ..................................................................................... 22

*United Nat'l Ret. Fund v. Watts*,
   2005 WL 2877899 (D. N.J., Oct. 28, 2025)................................................................. 15

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002) ..................................................................................... 22

*Winterrowd v. American General Annuity Insurance Co.*,
   556 F.3d 815 (9th Cir. 2009) ...................................................................................... 21

*Wojcik v. Omega Healthcare Investors, Inc., et al.*,
   Case No. 1:20-cv-03491-JKB (D. Md.)........................................................................ 23

*Yeagley v. Wells Fargo & Co.*,
   2008 WL 171083 (N.D. Cal. Jan 18, 2008) ................................................................. 16

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE
SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

**Statutes**

8 *Del. C.* § 220 ................................................................................................................ 6

**Rules**

Fed. R. Civ. P. Rule 23.1 ............................................................................................... 1, 2

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE
SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on June 30, 2026 at 2:00 p.m., or as soon thereafter as counsel may be heard, plaintiffs Jeffrey Edelman, Jaysen Stevenson, and Christian Jacobsen ("Federal Plaintiffs"), derivatively on behalf of nominal defendant CareDx, Inc. ("CareDx" or the "Company"), will move pursuant to Rule 23.1 of the Federal Rules of Civil Procedure ("Rule 23.1") before the Honorable Trina L. Thompson, United States District Court Judge, at the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 9 – 19th Floor, for final approval of the settlement (the "Settlement") as set forth in the Stipulation and Agreement of Compromise, Settlement, and Release, dated September 26, 2025 (the "Stipulation" or "Stip.") (ECF No. 56-1).[1]

The Settlement resolves all stockholder derivative claims in the above-captioned consolidated stockholder derivative action as well as a related stockholder derivative action pending in the Delaware Court of Chancery captioned *Edward W. Burns IRA v. Goldberg, et al.*, Case No. 2024-0286-NAC (Del. Ch.) (the "*Burns* Action" and together, the "Actions").

This Motion seeks final approval of the Settlement, approval of attorneys' fees and expenses in the amount of $600,000, and approval of a service award to each of the Federal Plaintiffs and the plaintiff in the related *Burns* Action (collectively, "Plaintiffs") in the amount of $1,500 each.

This Motion is based on the following Memorandum of Points of Authorities, the accompanying Declaration of Daniel Tepper ("Tepper Decl.") and the exhibits thereto, the Court's record and docket and all prior proceedings and papers filed in this matter, and other evidence and argument that may be presented prior to the Court's decision on this Motion. A [Proposed] Final Order and Judgment is submitted herewith.

Defendants do not oppose the relief sought herein.

---

[1] Unless otherwise noted, all capitalized terms herein have the same definition as in the Stipulation, emphasis in all quotations has been added, and all internal quotations, citations, brackets, and ellipses have been omitted.

1

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

**STATEMENT OF ISSUES TO BE DECIDED**

Whether: (i) the terms of the Settlement as set forth in the Stipulation should be approved as fair, adequate, and reasonable; (ii) the notice to CareDx stockholders fully satisfied the requirements of Rule 23.1 and due process; (iii) the Fee and Expense Application should be approved; and (iv) a service award to each of the Plaintiffs should be approved.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs brought claims against the Individual Defendants, current and former fiduciaries of nominal defendant CareDx, for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), breach of fiduciary duties, insider trading, and unjust enrichment arising from the Individual Defendants' alleged misconduct to artificially inflate the Company's medical testing revenue during the COVID-19 Pandemic and related false and misleading statements. After extensive, arm's-length negotiations among the Plaintiffs, the Individual Defendants, and nominal defendant CareDx, the Parties reached an agreement to resolve the Actions on the terms set forth in the Stipulation.

As consideration for the Settlement, subject to the Court's approval, CareDx has agreed to maintain for at least four years a number of Corporate Governance Reforms adopted as a result of the Actions and specifically tailored to prevent a recurrence of the alleged misconduct. This four year period is a significant and material term of the Settlement, and makes it more likely that the Corporate Governance Reforms will become part of the Company's standard business practices in the years that follow. The reforms include, *inter alia*: (i) creation of a management-level Disclosure Committee to provide strategic oversight of the Company's external communications; (ii) an independent compliance assessment to be performed by outside counsel with a total budget of $750,000 and a mandate to focus on the Company's compliance with applicable healthcare laws; (iii) enhancements to the responsibilities of the Audit Committee; (iv) an annual risk assessment to identify and mitigate material known risks to the Company; (v) annual training for officers and

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE
SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

directors on specific topics relevant to the alleged wrongdoing; and (vi) quarterly updates from the General Counsel to the Company's Board of Directors (the "Board") regarding the continued development and work of the Company's compliance program. The Corporate Governance Reforms are set forth in full in Exhibit A to the Stipulation.

The Parties agree that the Settlement is "in the best interest of CareDx and its stockholders;" that "the Corporate Governance Reforms are significant and confer substantial benefits upon CareDx and its shareholders;" and that "Plaintiffs' investigation, preparation, commencement, and prosecution of the [Actions] caused CareDx's adoption, implementation, and maintenance of the Corporate Governance Reforms." Stip. at 4, 9. It is therefore fair to say that the Parties agree that the Corporate Governance Reforms will improve the functioning of CareDx and convey to stockholders that they can invest in the Company with confidence. Indeed, this Court has already recognized "the substantial and lasting benefits conferred by the Corporate Governance Reforms[,]" which "demonstrate[s] that the Settlement is fair, reasonable and adequate as to all concerned[.]" *See* Order Granting Preliminary Approval of Settlement, ECF No. 62 ("Preliminary Approval Order") at 10 (internal quotations omitted).

The Parties began to negotiate attorneys' fees only after they had agreed on the substantive terms of the Settlement. Tepper Decl., ¶6. The negotiation was lengthy and contentious; indeed, the Stipulation reflects that the Parties had not reached an agreement concerning an award of attorneys' fees. Stip. at 16. With the help of a nationally recognized mediator, the Parties agreed that, subject to the Court's approval, Defendants would pay Plaintiffs' Counsel $600,000 in attorneys' fees and expenses in recognition of the substantial benefits conferred upon CareDx as a direct result of the prosecution and settlement of the Actions (the "Fee and Expense Amount"). Tepper Decl., ¶7. Plaintiffs also seek modest service awards of $1,500 each (the "Service Awards"), to be paid from the Fee and Expense Amount, for their participation and efforts in the prosecution of the Actions. Stip. at 17.

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

On December 9, 2025, the Court preliminarily approved the proposed Settlement and ordered CareDx to provide notice of the Settlement to CareDx stockholders. ECF No. 62. As directed therein, by December 23, 2025, CareDx: (i) published the Summary Notice in *The Wall Street Journal* and transmitted the Summary Notice by wire service; (ii) filed the Notice and Stipulation with the SEC in a Form 8-K; and (iii) published the Notice and Stipulation on CareDx's investor relations website. *Id.* at 14, 19; Tepper Decl., ¶3. At present, counsel are unaware of any objections to the Settlement. *Id.*, ¶5.

The Settlement readily meets the criteria for final approval and provides substantial benefits to CareDx by way of the Corporate Governance Reforms. The requested Fee and Expense Amount is reasonable. Accordingly, Plaintiffs respectfully request the Court to enter the accompanying [Proposed] Final Order and Judgment, grant final approval of the Settlement, approve the Fee and Expense Amount in full, and approve the Service Awards for each of the four Plaintiffs.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

CareDx is a diagnostics company that provides services and products to the organ transplant recipient community, offering diagnostic testing services, products, and digital healthcare software for transplant patients and care providers. Verified Stockholder Derivative Complaint (ECF No. 1, the "Complaint"), ¶2. The Federal Plaintiffs allege that the Individual Defendants: (i) caused the Company to issue materially false and misleading statements that emphasized an increase in the Company's medical testing revenue, while failing to disclose that it was artificially inflated through alleged improper and illegal schemes; (ii) breached their fiduciary duties by failing to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls over financial reporting; (iii) engaged in insider trading while having knowledge of the Company's true financial condition; and/or (iv) were unjustly enriched as a result of the foregoing. *Id.*, "), ¶¶2, 287 *et seq.*

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

## B. Procedural Background

### 1. The Federal Derivative Actions

On September 21, 2022, plaintiff Edelman brought a stockholder derivative action in this Court, captioned *Edelman v. Goldberg, et al.*, Case No. 3:22-cv-05379 (the "*Edelman* Action"). On February 7, 2023, plaintiff Stevenson brought a related stockholder derivative action in this Court, captioned *Stevenson v. Bickerstaff, et al.*, Case No. 3:23-cv-00557 (the "*Stevenson* Action"). On March 9, 2023, the Court issued an Order consolidating the *Edelman* and *Stevenson* Actions (the "Consolidation Order") into a consolidated action styled *In re CareDx, Inc. Derivative Litigation*, Case No. 3:22-cv-05379 (the "Consolidated Derivative Action"). On February 8, 2024, plaintiff Jacobsen brought a related stockholder derivative action in this Court, captioned *Jacobsen v. Bickerstaff, et al.*, Case No. 3:24-cv-00776 (the "*Jacobsen* Action"). Pursuant to the Consolidation Order, the *Jacobsen* Action was consolidated with and into the Consolidated Derivative Action. *See* Consolidated Derivative Action, ECF Nos. 26, 39.

On November 4, 2024, Plaintiffs and Defendants entered into a letter agreement providing, among other things, that Plaintiffs would agree to dismiss the Consolidated Derivative Action without prejudice and that Plaintiffs could re-file the Consolidated Derivative Action in the event the Court denied any part of the motion to dismiss the related Securities Class Action (defined *infra*). ECF No. 56, ¶7. On November 7, 2024, the Court issued an Order dismissing the Consolidated Derivative Action without prejudice pursuant to the Parties' stipulation. *See* Consolidated Derivative Action, ECF No. 73.

On February 18, 2025, the Court denied defendants' motion to dismiss the related Securities Class Action. ECF No. 56, ¶8. On February 26, 2025, the Federal Plaintiffs filed this action against the Individual Defendants. ECF No. 1.

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE
SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

### 2. The *Burns* Action

On March 14, 2023, CareDx stockholder Edward W. Burns IRA ("Burns") sent the Company a demand to inspect certain Company books and records pursuant to 8 *Del. C.* § 220. Counsel to Burns and the Company subsequently entered into a usual and customary confidentiality agreement and negotiated the scope of the Company's production, after which the Company produced certain of its books and records to Burns for inspection. On March 20, 2024, plaintiff Burns filed the *Burns* action in the Delaware Court of Chancery against the Individual Defendants for breach of fiduciary duties, aiding and abetting the same, waste of corporate assets, and unjust enrichment. ECF No. 56, ¶¶9-10.

### 3. The Related Securities Class Action

On May 23, 2022, the Company and certain of its current and former officers and directors were sued in this Court by a Company stockholder, on behalf of a class of Company investors, for allegedly violating federal securities laws by making materially false and misleading statements and/or failing to disclose material facts concerning the Company's medical testing services. *See Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc. et al*, Case No. 3:22-cv-03023-TLT (N.D. Cal.) (the "Securities Class Action"), ECF No. 1. Following the appointment of lead plaintiffs and intervening pleadings and motion practice, a Third Amended Class Action Complaint for Violations of Federal Securities Laws was filed on October 18, 2024. *Id.*, ECF No. 132. The Court denied defendants' motion to dismiss on February 18, 2025. *Id.*, ECF No. 154. On December 4, 2024, the Court granted final approval for the settlement of the Securities Class Action for $20.25 million. *Id.*, ECF 198 at 1, 12.

### 4. Settlement Negotiations, Preliminary Approval

On April 1, 2025, the Parties engaged in a mediation before the Hon. Gary A. Feess (Ret.) of Phillips ADR Enterprises. Prior to the mediation, Plaintiffs sent CareDx a written demand that included proposed corporate governance reforms. Although the mediation was unsuccessful, the Parties continued to engage in extensive arm's-length negotiations over the following months.

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

In July 2025, the Parties reached an agreement to resolve the Actions on the basis of the Corporate Governance Reforms as set forth in the Stipulation. ECF No. 56, ¶15. Defendants acknowledge that the Corporate Governance Reforms are significant and confer substantial benefits upon CareDx and its stockholder, and that the prosecution of the Actions was a substantial and material factor in the Company's decision to implement the reforms. Stip. at 4, 9.

The Federal Plaintiffs moved unopposed for preliminary approval of the Settlement on September 26, 2025. ECF Nos. 55-56. After asking for and receiving additional briefing in response to its questions, the Court held a hearing and subsequently issued the Preliminary Approval Order on December 9, 2025. ECF Nos. 59-62. Notably, the Parties had ***not*** agreed on any award of attorneys' fees at that time; indeed, both the Stipulation and Notice of the Settlement issued to CareDx shareholders reflect Plaintiffs' intention to seek attorneys' fees and expenses of up to $1.2 million which Defendants intended to oppose. Stip. at 16, Notice (Ex. C to *id.*) at 8.

### 5. Fee Negotiations

Only after the Parties agreed to the substantive terms of the Settlement in July 2025 did they begin to negotiate the attorneys' fees and expenses payable to Plaintiffs' Counsel in recognition of the substantial benefits achieved through the prosecution of the Actions. On September 9, 2025, the Parties engaged in a fee mediation before Jed D. Melnick, Esq., a nationally regarded mediator with JAMS. ECF No. 56, ¶16. The fee mediation was unsuccessful. *Id.* After continuing to negotiate over the following months, the Parties turned to Mr. Melnick in a final attempt to avoid a contested fee application. Tepper Decl., ¶¶5-6. With Mr. Melnick's help, on March 31, 2026, the Parties agreed that CareDx will not oppose Plaintiff's Counsel's Fee and Expense Application in the amount of $600,000. *Id.*

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

## III.    THE CORPORATE GOVERNANCE REFORMS

In consideration of the Settlement, CareDx will implement and maintain the Corporate Governance Reforms set forth in Exhibit A to the Stipulation. ECF No. 56-1 at Page 27-29. The Reforms, which are to be in place for at least four years, provide material benefits to CareDx and its shareholders, result in stronger corporate governance and internal controls, and are specifically tailored to address the misconduct alleged in the Actions. The Corporate Governance Reforms are summarized below:

- **Audit Committee Enhancement:** CareDx's Audit Committee shall conduct executive sessions on no less frequently than a quarterly basis with the Company's external auditor, Sarbanes-Oxley Act Compliance lead, and Chief Financial Officer ("CFO") to discuss any topics relevant to fulfilling its responsibilities, including, as applicable: (i) operations, enterprise risks, and compliance matters that may have a material impact on the Company's operational performance, financial health, balance of risk, stability, or liquidity; and (ii) any other matter required to be disclosed under state and federal securities laws and regulations, soliciting input, as needed, from the Disclosure Committee (defined below).

- **Disclosure Committee:** The Company shall create a management-level disclosure committee (the "Disclosure Committee") consisting of the Chief Executive Officer ("CEO"), CFO, General Counsel, Chief Medical Officer, and Vice President of Corporate Communications, to provide strategic oversight of the Company's external communications, including the implementation of a structured process for review of all public disclosures such as earnings transcripts, SEC filings, press releases, investor presentations, scientific publications, and corporate communications, to ensure alignment to strategic objectives and compliance with applicable law. The Disclosure Committee shall also meet with functional leaders that are not members of the Committee, as necessary, to establish clear communications of strategic objectives and assess strategic communications planning with respect to public reporting on matters that have a potential impact on customers, investors, media, and the general public. The Disclosure Committee shall meet not less than quarterly, and the chairman of the Disclosure Committee (or designee thereof) shall report to the full Board not less than quarterly.

- **Compliance Review:** The Company shall engage outside counsel by no later than the end of the first fiscal quarter of 2026 to provide an independent compliance assessment, focusing, in particular, on the Company's compliance with applicable health care fraud statutes, including the False Claims Act, Stark Law, and Anti-Kickback Statute. As part of this assessment, counsel shall recommend any necessary compliance-related reforms and enhancements. The Company shall provide a budget of $250,000 for this assessment. Following this assessment, the Company shall use its reasonable best efforts to implement these enhancements and provide for an annual budget for the fiscal

8

years 2027 and 2028 of not less than $250,000 per year in connection with the implementation and monitoring of the enhancements and related compliance and risk mitigation initiatives. The Company shall update the full Board concerning the status of the compliance review as part of the General Counsel's Quarterly Compliance Report (discussed below).

- **Annual Risk Assessment:** The Company, with the participation and oversight of the General Counsel or his or her designee, shall, on an annual basis, conduct a risk assessment and report to the Board of Directors any material risks to the Company, including any material risks related to compliance with applicable laws and regulations, and identify actual and potential steps to mitigate material known risks.

- **Executive Training:** The Company shall require annual training for officers and directors on risk assessment, compliance with laws and regulations governing public disclosures by the company, legal and regulatory updates pertinent to their responsibilities, and healthcare compliance matters (including relevant healthcare laws and regulations and best practices for sales, marketing, and billing).

- **Quarterly Compliance Report:** The General Counsel shall, on a quarterly basis, provide updates to the Board of Directors on the continued development and work of CareDx's compliance program.

## IV.   STOCKHOLDERS RECEIVED ADEQUATE NOTICE OF THE SETLEMENT

The Preliminary Approval Order found that the Parties' agreed-upon form and manner of notice of the proposed Settlement "sufficiently inform[s] recipients about the terms of the Settlement Agreement and the derivative nature of the litigation" and "is reasonably calculated to apprise shareholders of the [S]ettlement and their right to object," and thus complies with Rule 23.1 and "meet[s] all applicable requirements of due process and any other applicable requirements under federal law." ECF No. 62 at 15-16. The Preliminary Approval Order directed CareDx to publish and post notice of the Court-approved notice plan by December 23, 2026. *Id.* at 19. Pursuant to the notice plan, CareDx was to: (i) publish the Summary Notice once in *The Wall Street Journal* or *Investor's Business Daily* and transmit the Summary Notice once by wire service; (ii) file the Notice and Stipulation with the SEC in a Form 8-K; and (iii) publish the Notice and Stipulation on CareDx's investor relations website *Id.* at 14, 19. CareDx timely did so. Tepper Decl., ¶3. The deadline for stockholders to object to the Settlement is June 9, 2026. ECF No. 62 at

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

18, 19. To date, Counsel have not received any objections, and no objections were filed on the Court's docket. Tepper Decl., ¶5.

## V.    THE SETTLEMENT IS A FAVORABLE RESULT AND SHOULD BE FINALLY APPROVED

Approval of a derivative settlement is governed by Rule 23.1, which guides "a district court's analysis of the fairness of a settlement of a stockholder derivative action." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 516 (N.D. Cal. 2020), *aff'd,* 845 F. App'x 563 (9th Cir. 2021). In conducting this analysis, courts are cognizant that "[t]he Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions," which is equally applicable to shareholder derivative litigation. *Id.*; *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008) ("Because shareholder derivative actions are notoriously difficult and unpredictable… settlements are favored.").

While the Court exercises its sound discretion in evaluating a proposed settlement, "the court's intrusion on what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the [settlement] agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he question… is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (overruled on other grounds); *see also Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *8 (N.D. Cal. Apr. 22, 2010) (substantially similar).

In the Ninth Circuit, the Court may "consider a range of factors, including the strength of the plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation, the amount offered in settlement, the stage of the proceedings, the experience and views of counsel, and the reaction of class members to the proposed settlement." *In re Hewlett-Packard Co. S'holder*

10

*Derivative Litig.*, 716 F. App'x 603, 605 (9th Cir. 2017). "The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re OSI Sys., Inc. Derivative Litig.*, 2017 WL 5642304, at *2 (C.D. Cal. May 2, 2017).

### A. The Substantial Benefits Conferred Upon CareDx Support Final Approval

Courts have long recognized that "a corporation may receive a 'substantial benefit' from a derivative suit… regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970). "[S]trong corporate governance is fundamental to the economic well-being and success of a corporation[,]" and corporate governance reforms designed to prevent recurrence of alleged wrongdoing "provide valuable benefits to public companies[.]" *In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 5382544, at *3. That is because corporate governance reforms are "a form of relief that [Plaintiffs] could not have obtained at trial" and are thus achievable only through a negotiated resolution. *In re Activision Blizzard*, *Inc. S'holder Litig.*, 124 A.3d 1025, 1067 (Del. Ch. 2015).

The Corporate Governance Reforms (set forth in Point III, *supra* and Ex. A to the Stip.) provide a substantial benefit to CareDx because they were judiciously designed to prevent a recurrence of the alleged misconduct and to bolster investor confidence in the Company's management and its public disclosure. Specifically:

- The **<u>Audit Committee Enhancement</u>** corrects the alleged failures in Board-level oversight that allowed improper revenue inflation and false disclosures to persist. Quarterly executive sessions will facilitate candid discussions on enterprise risks, including those related to Medicare reimbursement, testing protocols, and public reporting practices, directly addressing the Complaints' claims of undisclosed regulatory scrutiny and artificially inflated metrics. By involving external auditors and key officers, the Audit Committee will gain real-time insights to detect and mitigate issues like kickbacks or bundling violations early. This proactive structure prevents recurrence by embedding rigorous, periodic evaluations into the governance framework,

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

ensuring compliance with securities laws and reducing exposure to government investigations such as those which gave rise to the Securities Class Action.

• The creation of a management-level **Disclosure Committee** addresses Plaintiffs' allegations of the issuance of materially false and misleading statements regarding testing services revenue, demand, and business prospects. By establishing a dedicated committee at the management level, the Company will implement structured review processes for all public disclosures, including SEC filings, press releases, and investor communications. This will correct past deficiencies in disclosure practices that caused the omission of risks related to improper revenue inflation schemes and government scrutiny. Prevention of recurrence will be achieved through systematic vetting to ensure public disclosure accuracy, completeness, and compliance with securities laws, reducing the likelihood of misleading investors about metrics like average sales price (ASP) and testing volume, which were artificially inflated due to non-compliant practices.

• The **Compliance Review** with a guaranteed $750,000 budget over three years directly targets the core misconduct alleged in the Actions, including violations of Medicare regulations through inaccurate marketing, kickbacks, and improper bundling of tests via RemoTraC. Engaging independent outside counsel for a comprehensive, ongoing review will identify and correct any existing non-compliance with key healthcare fraud statutes, such as those prohibiting false claims for medically-unnecessary tests or unlawfully inducing providers. The dedicated annual budget ensures thorough audits, remediation plans, and implementation of corrective measures, addressing the regulatory risks that led to the government investigations. By mandating this multi-year commitment, the reform prevents future schemes to inflate revenue through illegal practices, promoting ethical marketing, billing, and service delivery in the Company's testing operations.

• The **Annual Risk Assessment** addresses Plaintiffs' allegations of inadequate risk management that enabled misconduct, such as promoting medically-unnecessary surveillance testing and failing to disclose associated risks. An annual risk assessment overseen by the General

12

Counsel will identify systemic vulnerabilities in areas like healthcare compliance, marketing accuracy, and revenue practices, correcting past oversight failures that led to government probes and stock declines. Presentation to the full Board ensures accountability at the highest level, preventing future issues by mandating data-driven strategies to mitigate risks, including those tied to Medicare regulations and improper provider inducements.

- The **Executive Training** tackles the alleged breaches of fiduciary duties through education on critical topics like risk assessment, securities compliance, and healthcare laws (*e.g.*, False Claims Act, Stark Law, Anti-Kickback Statute), directly countering the misconduct involving inaccurate marketing and the payment of kickbacks. Mandatory annual training for officers and directors will correct knowledge gaps, fostering a deeper understanding of obligations under Medicare and securities laws and regulations. By institutionalizing this training, this reform prevents recurrence by equipping leadership to recognize and avoid practices that improperly inflate revenue or lead to misleading disclosures, by promoting ethical decision-making across the organization.

- Finally, the **Quarterly Compliance Report** ensures ongoing board awareness and refinement of the compliance program, addressing Plaintiffs' allegations of concealed misconduct and inadequate internal controls. Quarterly updates will cover progress on compliance initiatives, including responses to risks like bundling violations or regulatory investigations, correcting the alleged lack of transparency which allowed issues to escalate. By requiring regular reporting and development, this measure prevents future violations by enabling timely adjustments to the program, reinforcing adherence to laws and regulations governing testing services, reimbursements, and public disclosures.

Collectively, the Corporate Governance Reforms represent a comprehensive overhaul of the Company's governance, compliance, and oversight mechanisms. They will rectify the deficiencies highlighted in the Actions, safeguard against similar misconduct, and enhance long-term value for Company's stockholders by minimizing legal, regulatory, and reputational risks.

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE
SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

Implementation of these measures will align the Company's operations with best practices in corporate governance and healthcare compliance, ensuring that the issues alleged in the Complaints—such as revenue inflation and related false public statements—do not recur.

### B. The Difficulty of the Case Supports Final Approval

In assessing the fairness, reasonableness, and adequacy of the Settlement, the Court should balance the benefits of settlement against the continuing risks of litigation. *Officers for Justice*, 688 F.2d at 625. Derivative actions are undoubtedly complex and fraught with risk. Indeed, the Ninth Circuit noted that "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (affirming derivative settlement approval). This Court acknowledged as much, noting in the Preliminary Approval Order that "the terms of the Settlement appear to be adequate, considering the costs, risks, and delay of trial and appeal." ECF No. 62 at 11. Nothing has changed since this analysis was conducted to reach a different conclusion. Though Plaintiffs believe that their claims are meritorious, it would have been challenging for Plaintiffs to prevail had they continued to litigate. Plaintiffs would have had to clear serious legal hurdles to survive the pleading stage, including defeating Defendants' all but certain motions to dismiss for failure to adequate plead demand futility and failure to state a claim. Even if Plaintiffs were to overcome these attacks on the pleadings, they would face continued challenges in overcoming potential defenses and establishing liability, which would require showing by a preponderance of the evidence that the Individual Defendants acted in bad faith. *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 342 (S.D.N.Y. 2011). Indeed, Plaintiffs' oversight claims are widely recognized as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

And even if Plaintiffs to defeat a motion for summary judgment and then prevail at trial, they would still face the daunting challenge of proving the Company's damages. *See, e.g.*, *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *5 (N.D. Cal. Feb. 15, 2011)

14

("Calculation of damages… is a complicated and uncertain process, typically involving conflicting expert opinions"); *Basaraba v. Greenberg*, 2014 WL 12591677, at *3 (C.D. Cal. Nov. 10, 2014) (assessing damages in a stockholder derivative action "would be hotly disputed and primarily entail a 'battle of the experts[]'" and that "[j]uries can be very unpredictable in their reactions to expert testimony and theories").

In choosing to settle the Action, Plaintiffs considered the substantial risk that continued litigation would have jeopardized the possibility of any recovery for the Company, as the benefits to CareDx through the Corporate Governance Reforms could not have been obtained even if the Plaintiffs had prevailed at trial. *Activision*, 124 A.3d at 1067. In contrast, the Settlement provides the certainty of admittedly substantial benefits to the Company in the form of the Corporate Governance Reforms which are designed to prevent a recurrence of the alleged wrongdoing. *United Nat'l Ret. Fund v. Watts*, 2005 WL 2877899, at *4 (D. N.J., Oct. 28, 2025) ("The settlement provides immediate and substantial benefits for all parties and represents a better option than little or no recovery at all.").

### C. The Stage of the Proceedings Supports Final Approval

The stage of the proceedings further supports final approval of the Settlement. As the Ninth Circuit has recognized, settlement negotiations may be appropriate when the parties have "sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiffs' Counsel conducted an intensive investigation into their allegations, which included: a detailed review and analysis of financial reports, press releases, SEC filings and news articles; reviewing court filings and contacting counsel in related actions including the Securities Class Action and a related whistleblower action; reviewing internal Company documents; staying informed about government investigations involving CareDx; researching the law governing claims asserted (or which could be asserted) in the Actions and potential defenses thereto; and drafting their pleadings. ECF No. 56, ¶22; Stip. at 10. Plaintiffs thus had a clear understanding of the strengths and weaknesses of the Actions and

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

sufficient information to make reasoned judgments in negotiating the Corporate Governance Reforms. Thereafter, Plaintiffs' Counsel researched corporate governance best practices necessary to address the Company's alleged internal control weaknesses and engaged in lengthy settlement negotiations with Defendants' counsel. ECF No. 56, ¶22. As this Court previously recognized, "Counsel for the parties appear to have engaged in fact intensive investigations to participate in informed settlement negotiations" in light of which this Court was "satisfied that they possessed sufficient information to make an informed decision about settlement." Preliminary Approval Order at 12 (internal quotations omitted).

### D. The Strength of Plaintiffs' Claims Compared to the Benefits of Settlement Supports Final Approval

"Basic to [analyzing a proposed settlement] in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *Yeagley v. Wells Fargo & Co.*, 2008 WL 171083, at *4 (N.D. Cal. Jan 18, 2008), *rev'd on other grounds,* 365 F. App'x 886 (9th Cir. 2010). Courts routinely approve as fair and reasonable settlements that offer even minimal benefits in exchange for the release of difficult claims. *See, e.g.*, *Myers v. MedQuist, Inc.*, 2009 WL 900787, at *16 (D.N.J. Mar 31, 2009) ("The question is whether the proposed settlement provides a good value for Plaintiffs' weak claims"). There is no "particular formula by which th[e] [proposed settlement] must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 965. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Such is the case here too.

### E. The Experience and Views of Counsel Supports Final Approval

Significant weight is given to recommendations of experienced counsel who determine that settlement is in the best interest of the case. *See Officers for Justice*, 688 F.2d at 625; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of

16

plaintiffs' counsel should be given a presumption of reasonableness."); *Moore v. Verb Tech. Co., Inc.*, 2021 WL 11732976, at *6 (C.D. Cal. Mar. 1, 2021) (finding settlement "is the product of serious, informed, non-collusive negotiations performed at arm's-length" when counsel "are experienced litigators in this field, have worked on this case at length, and have an understanding of its risks[.]"). By entering into the Stipulation, the Parties and their counsel have independently considered the Settlement and all agree that it is in the best interest of, and confers substantial benefits to, CareDx and its stockholders. Stip. at 4, 9, 11, 16.

Plaintiffs' Counsel have been at the forefront of prosecuting stockholder derivative claims, as reflected in the firm resumes of Levi & Korsinsky, LLP; The Rosen Law Firm, P.A.; Bragar Eagel & Squire, P.C.; and Rigrodsky Law, P.A. *See* Tepper Decl., Ex. 1; and Ex. A to Exhibits 2-4; *see also, In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) ("Levi & Korsinsky LLP has extensive experience representing plaintiffs in securities and financial class action lawsuits…. That such experienced counsel advocate in favor of the settlement weighs in favor of approval."); *Ishak v. WM Tech., Inc.*, 2025 WL 791270, at *5 (C.D. Cal. Mar. 11, 2025) ("Rosen Law Firm, is a reputable class action firm whose attorneys appear to possess the skills, experience, and resources necessary to prosecute this [securities] action."); *In re Activision Blizzard, Inc. Stockholder Litig.*, 124 A.3d 1025, 1074 (Del. Ch. 2015) ("Lead Counsel [Bragar Eagel & Squire, P.C.] brought a particular blend of expertise, initiative, and ingenuity to the case. In my view, few litigation teams could have achieved this result against the determined, well-represented, and aggressive adversaries that Lead Counsel faced."); *Gilbert v. Perlman,* C.A. No. 2018-0453-VCG (Del. Ch. Apr. 26, 2022), Tr. at 25:22-26:4 ("I also congratulate you, [Rigrodsky Law]… think this was a very good settlement for the class. It obviously was litigated hard, mediated hard, and is an example of how corporate litigation ought to proceed in this Court.") (Tepper Decl., Ex. 5).

For their part, Defendants were vigorously represented by Willkie Farr & Gallagher LLP, a leading corporate defense firm which zealously protected their clients' interests. This further

17

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF CASE NO. 3:25-cv-02036-TLT

weighs in favor of granting final approval. *See Rodriguez*, 563 F.3d at 967 ("parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation"); *In re MRV Commc'ns, Inc. Derivative Litig.*, 2013 WL 2897874, at *2 (C.D. Cal. June 6, 2013) ("The involvement of experienced counsel and the fact that the settlement agreement was reached in arm's length negotiations" create "a presumption that the agreement is fair."). Not only are all counsel experienced practitioners, but the negotiations throughout were aided by nationally recognized third-party neutrals including Hon. Gary A. Feess (Ret.) formally of the Central District of California (on the merits), and Jed Melnick of JAMS (on fees). Moreover, this Court has already found in the Preliminary Approval Order that their involvement as mediators, the length of time of the negotiations, and the experience of counsel supported approval and that the Settlement was the result of non-collusive negotiations. ECF No. 62 at 13-14.

In addition, Courts traditionally give substantial deference to directors' exercise of their independent business judgment. *Navellier v. Sletten*, 262 F.3d 923, 946 (9th Cir. 2001) ("A hallmark of the business judgment rule is that a court will not substitute its judgment for that of the board if the latter's decision can be attributed to any rational business purpose."). Here, the Company's Board (including each of the independent, non-defendant directors) exercised its good faith business judgment and determined that "the Settlement confers a substantial benefit upon CareDx and its stockholders" and that "the Settlement, and each of its terms, is in all respects fair, reasonable, and in the best interests of CareDx and its stockholders." Stip. at 4.

### F. The Reaction of the Company's Stockholders Supports Final Approval

"[T]he reaction of the class to the proffered settlement is perhaps the most significant factor to be weighed in considering its adequacy[.]" *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009). Indeed, the "lack of objections" to the settlement "may well evidence [its] fairness[.]" *In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *6 (S.D.N.Y. Sept. 6, 2006). As set forth above, the Notice of the Settlement was

18

disseminated to the Company's stockholders in accordance with notice program set forth in the Preliminary Approval Order. The Notice informed the Company's stockholders that the deadline to object to the proposed Settlement is June 9, 2026. ECF No. 62 at 19. To date, counsel have not received any objections, and no objections were filed on the Court's docket. Tepper Decl., ¶5. This factor weighs heavily in favor of final approval of the Settlement. *See MRV*, 2013 WL 2897874, at *5 (final approval of shareholder derivative settlement supported where plaintiffs "[were] not aware of a single objection to any aspect of the Settlement.").

\*      \*      \*

For all of the foregoing reasons, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate and should be approved in all respects.

### VI.    THE SEPARATELY-NEGOTIATED FEE AND EXPENSE AMOUNT IS REASONABLE AND SHOULD BE APPROVED

Under the "substantial benefit" doctrine, counsel who prosecute a shareholder derivative action that results in a substantial benefit for the corporation are entitled to an award of reasonable attorneys' fees and expenses. *Mills*, 396 U.S. at 394-96. As the United States Supreme Court further noted, a "request for attorney's fees should not result in a second major litigation. Ideally, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The Parties agree that the Corporate Governance Reforms confer a substantial benefit upon CareDx and its stockholders. Stip. at 4, 9. Only after the Parties agreed to the substantive terms of the Settlement did they begin lengthy arm's length negotiations over the Fee and Expense Amount. Tepper Decl., ¶¶6-7. With the help of a nationally recognized mediator, the Parties ultimately agreed that, subject to Court approval, the Company would pay Plaintiffs' Counsel $600,000 as their attorneys' fees and expenses. *Id.*; ECF No. 56, ¶16. The Fee and Expense Amount was only reached after a formal mediation session and subsequent additional negotiations with Mr. Melnick's oversight over several months. *Hu v. Baker*, 2025 WL 2419265, at *6 (N.D. Cal. Aug. 21, 2025) (finding "arms-length, non-collusive, negotiated resolution" when a mediator supervises "multiple sessions of negotiations"). The Company is a sophisticated party represented by zealous

19

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

counsel and has every incentive to negotiate the lowest reasonable fee for the services rendered by Plaintiffs' Counsel. Moreover, the agreed Fee and Expense Amount is exactly half the amount that Plaintiffs' Counsel intended to seek according to the Notice – to which no objections have been received. Stip. at 16, Notice (Ex. C to *id.*) at 8; Tepper Decl., ¶5.

These undisputed facts are strong evidence that the Fee and Expense Amount was not the result of collusion. *See In re Apple Computer, Inc., Derivative Litig.*, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) (fee negotiations were free of collusion because, among other things, "the proposed award of attorneys' fees was negotiated separately from" the settlement terms, and only after agreeing to the settlement terms "did [the parties] allocate attorneys' fees."). There was no collusion or self-dealing in the Parties' agreement upon the Fee and Expense Amount, which Plaintiffs' Counsel "negotiated at arm's length with sophisticated defendants by the[ir] attorneys… intimately familiar with the case." *In re First Capital Holdings Corp. Financial Prods.*, No. MDL 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992). Thus, "[t]he parties' separately-negotiated attorneys' fees arrangement warrants significant deference." *OSI Sys.,* 2017 WL 5642304, at *5.

Unlike when fees are awarded from a common fund such as in a class action, the Court is not required to fashion a fee and expense award. Rather, the Court need only determine if the agreed-to Fee and Expense Amount falls within the range of reasonableness. Under the circumstances, in this District, the "negotiated fee agreement... is not subjected to the same level of judicial scrutiny as a disputed fee request." *Feuer v. Thompson*, 2013 WL 2950667, at *4 (N.D. Cal. 2013). *See also In re Google Inc. S'holder Derivative Litig.*, Case No. 4:11-cv-04248-PJH, Tr. of Fairness Hearing at 11:21-12:6 (N.D. Cal. Jan. 21, 2015) (in evaluating agreed fee amount, "the Court's responsibility is a little different than in your typical class action given the determination by the corporate entity that the amount is satisfactory") (Tepper Decl., Ex. 6). In like circumstances, the Court "should refrain from substituting its own value for a properly bargained-for agreement." *Apple Computer*, 2008 WL 4820784, at *3. Instead, the Court's role is "to ensure that the Parties' agreement on fees and expenses is reasonable and does not reflect a

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF CASE NO. 3:25-cv-02036-TLT

collusive settlement[.]" *Sadowska v. Volkswagen Group of America, Inc.*, 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013).

The agreed upon $600,000 Fee and Expense Amount is the result of protracted, arm's-length negotiations, and it is reasonable. Deducting Plaintiffs' Counsel's total unreimbursed expenses of $39,748.88 and the four $1,500 service awards requested below calculates to net attorneys' fees of $554,251.12. This calculates to just 51.56% of Plaintiffs' Counsel's collective lodestar of $1,074,980.50, reflecting 1,193 hours worked by Plaintiffs' Counsel on the Actions. *See* Tepper Decl., ¶9; Declaration of Erica L. Stone (Ex. 2 thereto), ¶5; Declaration of Melissa Fortunato (Ex. 3 thereto), ¶5; and Declaration of Vincent A. Licata (Ex. 4 thereto), ¶5 (setting forth under oath the hours worked by Plaintiffs' Counsel and their current billing rates); *Winterrowd v. American General Annuity Insurance Co.*, 556 F.3d 815, 827 (9th Cir. 2009) ("Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees").[2]

Lodestar "is primarily used [to fix a fee] in cases, such as this one" where the settlement is "not easily monetized." *Campbell v. Facebook Inc.*, 2017 WL 3581179, at *3 (N.D. Cal. Aug. 18, 2017), *aff'd*, 915 F.3d 1106 (9th Cir. 2020), citing *Gerwen v. Guarantee Mut. Life Ins. Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Because lodestar approximates the market value of Plaintiffs' Counsel's legal services, it "presumptively provides an accurate measure of reasonable attorney's fees." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994). Indeed, the Ninth Circuit has ruled that there is a "strong presumption that the lodestar figure represents a reasonable fee" and "although a court can adjust the lodestar upward or downward based on certain factors, adjustments are the exception rather than the rule." *Rodriguez v. West Publ. Corp.*, 602 Fed. Appx. 385, 387 (9th Cir. 2015). "Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a

---

[2] In determining a reasonable attorneys' fee award, "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *Konits v. Valley Stream Cent. High Sch. Dist.*, 350 F. App'x 501, 504 n.2 (2d Cir. 2009); *Mathur v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 744-45 (7th Cir. 2003) (to adjust for delay in payment, trial courts may calculate lodestars using "either current rates or past rates with interest").

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

case not be commensurate with the fees to which he is entitled." *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988). The fact that the net Fee and Expense Amount of $554,251.12 represents a fraction multiplier of less than 0.52 of Plaintiffs' Counsel's lodestar is strong evidence that it is reasonable. Courts have awarded attorneys' fees with significantly higher lodestar multipliers. *See e.g. Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 105-52 (9th Cir. 2002)(collecting cases and finding average approved lodestar multiplier of 3.28); *Buccellato v. AT&T Operations, Inc.,* 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (collecting cases approving multipliers from 4.3 to 9.3 and approving 4.3 lodestar multiplier); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005) (approving 2.9 multiplier, noting that "[i]n shareholder litigation, courts typically apply a multiplier of 3 to 5").

There is no compelling basis to modify Plaintiffs' Counsel's lodestar, which may be adjusted in light of the (1) results obtained, (2) novelty and complexity of the questions presented, (3) skill exhibited by counsel, (4) preclusion of other legal work because of counsel's acceptance and prosecution of the case, and (5) risk of nonpayment. *Hanlon,* 150 F.3d at 1029. Indeed, the Ninth Circuit has held that a district court "*must* apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.' Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (italics in original). Each of these factors is present here: contingent litigation anticipates a risk multiplier; Plaintiffs' Counsel's hourly rates used to calculate lodestar do not reflect a risk multiplier; and "derivative lawsuits are rarely successful." *Apple Computer*, 2008 WL 4820784, at *3, citing *Pac. Enters., supra*.

The fact that Plaintiffs' Counsel prosecuted this case on a purely contingent basis is a compelling reason to find that the requested Fee and Expense Amount is reasonable. Plaintiffs' Counsel undertook the representation of the Plaintiffs in the Actions, aware that they would have to devote many hours of hard work to the prosecution of a difficult derivative case with no

22

assurance of receiving any fees or even reimbursement for out-of-pocket expenses. Tepper Decl., ¶8. Their willingness to take on the risky and challenging Actions justifies the award of the agreed-upon Fee and Expense Amount that was negotiated at arm's length by the Parties over a period of months only after the material terms of the Settlement were agreed upon. *See Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d at 523 ("The risk that [Plaintiffs' Counsel] took in litigation on a contingency basis also weighs in favor of a substantial attorney's fee award").

Finally, the requested Fee and Expense Amount compares favorably with fees awarded in similar settlements of derivative cases nationwide. *See, e.g.*, *In re F5 Networks, Inc. Derivative Litig.*, 2011 WL 13195985, at *1 (W.D. Wash. Jan. 6, 2011) ($5 million fee for governance); *In re Southern Company S'holder Derivative Litig.*, 2022 WL 4545614 (N.D. Ga. June 9, 2022) ($3.5 million fee for governance); *In re Okta, Inc. Stockholder Derivative Litigation*, Case No. 3:22-cv-07480-SI (N.D. Cal. 2025) ($2,250,000 fee for governance); *see* Tepper Decl., Ex. 7A (Stipulation and Agreement of Settlement) and 7B (Judgment); *In re Zuora, Inc. Derivative Litigation*, Case No. 3:19-cv-05701-SI (N.D. Cal. 2023) ($2,000,000 fee for governance); Tepper Decl., Ex. 8A (Stipulation and Agreement of Settlement) and 8B (Judgment); *Gantulga v. Aron et al.*, Case No. 1:18-cv-10007-ALC (S.D.N.Y.), 2023 WL 8720129, at *6 ($1 million fee for governance-only derivative settlement); *In re: Synchrony Financial Derivative Litigation*, Case No. 3:19-cv-00130-VAB ($885,000 fee for governance-only derivative settlement), *see* Tepper Decl., Ex. 9A (Stipulation of Settlement) and 9B (Judgment); *Wojcik v. Omega Healthcare Investors, Inc., et al.*, Case No. 1:20-cv-03491-JKB (D. Md.) ($850,000 fee for non-monetary derivative settlement), *see* Tepper Decl., Ex. 10 (Memorandum).

A particularly relevant comparator is this Court's recent award of a $575,000 fee in *In re Align Technology, Inc. Deriv. Litig.*, Case No. 19-cv-00202-TLT (N.D. Cal.), for a governance-only settlement of a derivative action arising out of corporate fiduciaries' alleged breaches of fiduciary duties and violations of the securities laws principally concerning disclosures related to

the company's promotions, loyalty programs, and other business practices. Tepper Decl., Ex. 11B (Order Granting Final Approval of Derivative Settlement) at 11-12.

As noted in Section V(A) above, here the Corporate Governance Reforms here are tightly calibrated to the underlying healthcare compliance allegations. The **Audit Committee Enhancement** specifically contemplates addressing risks related to Medicare reimbursement and testing protocols. The new **Disclosure Committee** is tasked with implementing structured processes for vetting all public disclosures. The **Compliance Review** is directed specifically at False Claims Act, Stark Law, and Anti-Kickback Statute compliance, the precise statutory frameworks at issue in the Actions. The **Annual Risk Assessment** is intended to identify systemic vulnerabilities in the Company's core compliance functions. The **Executive Training** expressly covers healthcare compliance matters, including relevant healthcare laws and regulations and best practices for sales, marketing, and billing. The **Quarterly Compliance Report** ensures ongoing Board visibility into the Company's compliance posture.

Although beneficial to the company, the reforms in *Align* – such as the addition of a cybersecurity expert to the Audit Committee, enhanced human capital disclosures, and diversity-related charter amendments – were nevertheless attenuated to the alleged failures in promotional disclosure practices. Tepper Decl., Ex. 11A (Stipulation and Agreement of Settlement and Release). Another difference is that here, the Corporate Governance Reforms commit the Company to spend $750,000 to engage outside counsel to conduct an independent compliance assessment and subsequently implement and monitor the recommended compliance enhancements and related risk-mitigation initiatives. The reforms in *Align* contain no analogous monetary commitment. This distinction is significant because it converts governance reforms from the aspirational into enforceable, funded obligations that can be measured and verified. Plaintiffs respectfully submit that a modest $25,000 premium to the fee award in *Align* is amply justified in light of the substantial benefits achieved for CareDx and its stockholders.

24

## VII. THE SERVICE AWARDS ARE REASONABLE AND SHOULD BE APPROVED

The Ninth Circuit recognizes that "named plaintiffs… are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Service awards are routinely approved in stockholder derivative actions. They "are not intended to 'compensate' plaintiffs, but instead serve to encourage people with legitimate claims to pursue the action" *Sauby v. City of Fargo*, 2009 WL 2168942, at *1 (D.N.D. July 16, 2009). "Incentive awards of $5,000 or less are usually presumptively reasonable in this district." *Campbell*, 2017 WL 3581179, at *4. And where, as here, the service award is to be paid from the Fee and Expense Amount, it "need not be subject to intensive scrutiny, as the interests of the corporation, the public and the defendants are not directly affected." *OSI Sys.*, 2017 WL 5642304, at *5 citing *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327 (D.N.J. 2002). Plaintiffs' Counsel respectfully submit that the modest $1,500 service awards to each of the Plaintiffs, to be paid out of the Fee and Expense Amount, should be approved based on Plaintiffs' time, effort, and service as representative plaintiffs in the Actions.

## VIII. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, confers substantial benefits on CareDx in the form of the Corporate Governance Reforms. Accordingly, Plaintiffs respectfully move the Court to approve the: (i) Settlement, (ii) agreed-to $600,000 Fee and Expense Amount in full; and (iii) requested Service Awards.

Dated: April 14, 2026                         Respectfully Submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Erica L. Stone*
Erica L. Stone (admitted *pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Email: estone@rosenlegal.com

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Email: lrosen@rosenlegal.com

**LEVI & KORSINSKY, LLP**
Daniel Tepper (admitted *pro hac vice*)
Gregory M. Nespole
Correy A. Suk
33 Whitehall Street, 27th Floor
New York, New York 10004
Telephone: (212) 363-7500
Email: gnespole@zlk.com
        dtepper@zlk.com
        csuk@zlk.com

Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100 - #3425
San Francisco, CA 94111
Telephone: (415) 373-1671
Email: aapton@zlk.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato (SBN 319767)
580 California Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 568-2124
Email: fortunato@bespc.com

***Counsel for Plaintiffs***

26

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE
SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 14, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the Electronic Mail Notice for this action.

*/s/ Erica L. Stone*
Erica L. Stone

27

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, ETC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF
CASE NO. 3:25-cv-02036-TLT