UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY EDELMAN, et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>GEORGE BICKERSTAFF, et al.,<br><br>    Defendants. | Case No.  25-cv-02036-TLT<br><br>**ORDER GRANTING FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARDS**<br><br>Re: Dkt. No. 63 |

Before the Court is Plaintiffs' unopposed motion for final approval of proposed derivative settlement and motion for award of attorneys' fees, expenses, and service awards.  ECF 63; ECF 65.  The Court held a hearing on this matter on June 30, 2026. ECF 71

Having considered the briefings of prior motions, the terms of the Settlement Agreement, and the other matters on file in this action, the Court **GRANTS** the motion for final approval and **GRANTS** the motion for attorneys' fees, expenses, and service awards.

## I.  BACKGROUND

### A.  The Derivative Action

On September 21, 2022, Plaintiff Edelman filed a Verified Stockholder Derivative Complaint in this Court, captioned *Edelman v. Goldberg, et al.*, Case No. 3:22-cv-05379 (the "*Edelman* Action").

On February 7, 2023, Plaintiff Stevenson filed a Verified Stockholder Derivative Complaint in this Court, captioned *Stevenson v. Bickerstaff, et al.*, Case No. 3:23-cv-00557 (the "*Stevenson* Action").

On March 9, 2023, the Court consolidated the *Edelman* Action and the *Stevenson* Action (the "Consolidation Order") into one case *In re CareDx, Inc. Derivative Litigation*, Case No. 3:22-

cv-05379 (the "Consolidated Derivative Action").  *See* Case No. 3:22-cv-05379, ECF 26.

On February 8, 2024, Plaintiff Jacobsen filed a Verified Stockholder Derivative Complaint in this Court, captioned *Jacobsen v. Bickerstaff, et al*., Case No. 3:24-cv-00776 (the "*Jacobsen* Action").  Pursuant to the Consolidation Order, the *Jacobsen* Action was consolidated with the Consolidated Derivative Action.  *Id*., ECF 39.

On November 4, 2024, Plaintiffs and Defendants entered into a letter agreement (the "Letter Agreement") providing, among other things, that Plaintiffs would agree to dismiss the Consolidated Derivative Action without prejudice and that Plaintiffs could re-file the Consolidated Derivative Action in the event the Court denied any part of the motion to dismiss the related action, *Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc. et al*, Civ. No. 3:22-cv-03023 (N.D. Cal.) (the "Securities Class Action").  On November 7, 2024, the Court issued an Order dismissing the Consolidated Derivative Action without prejudice pursuant to the Parties' stipulation. *See* Consolidated Derivative Action. On February 18, 2025, the Court denied defendants' motion to dismiss the Securities Class Action.

On February 26, 2025, Plaintiffs filed a verified stockholder derivative complaint (the "Derivative Action") against the individual defendants George Bickerstaff ("Bickerstaff"), Fred Cohen ("Cohen"), Christine Cournoyer ("Cournoyer"), Grace E. Colón ("Colón"), Ankur Dhingra ("Dhingra"), Michael D. Goldberg ("Goldberg"), William Hagstrom ("Hagstrom"), Peter Maag ("Maag"), Reginald Seeto ("Seeto"), Ralph Snyderman ("Snyderman"), Arthur A. Torres ("Torres"), and Hannah Valantine ("Valantine"), certain directors and officers of CareDx, (collectively, the "Individual Defendants," and together with CareDx, the "Defendants") alleging (1) breaches of fiduciary duty, (2) unjust enrichment, (3) insider trading, and (4) violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act").

**B.    The Burn Action**

On March 14, 2023, the Edward W. Burns IRA ("Burns") sent CareDx a demand to inspect certain company books and records pursuant to 8 Del. C. § 220 ("Section 220").  ECF 5, Declaration of Vincent A. Licata, ("Licta Decl.") ¶ 4.  CareDx responded to that demand on March 23, 2023.  ECF 63 at 14.  On March 27, 2023, counsel for Burns and counsel for CareDx

2

engaged in discussions regarding the scope of production of Section 220 materials and entry into a Confidentiality Agreement with respect to such production. *Id.* Counsel for Burns and the CareDx executed a Confidentiality Agreement on May 30, 2023, and CareDx produced Section 220 documents to Burns on June 1, 2023. *Id.*

On March 20, 2024, after reviewing the documents produced in response to his Section 220 demand, Burns filed the action captioned *Edward W. Burns IRA v. Goldberg, et al.*, Case No. 2024-0286-NAC (Del. Ch.) (the "Burns Action"), alleging (1) breach of fiduciary duties, (2) unjust enrichment, (3) aiding and abetting breaches of fiduciary duty, and (4) waste of corporate assets against the Individual Defendants. *Id.* Counsel for Burns will file a request for dismissal in the Burns action within seven (7) days of final approval of the Settlement in this case.

### C.    The Related Securities Class Action

On May 23, 2022, a putative shareholder—on behalf of a purported class of investors—sued CareDx for violations of the federal securities laws in connection with the issuance of alleged materially false and misleading statements and failure to disclose facts concerning CareDx's testing services. *See Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc. et al*, Case No. 3:22-cv 03023-TLT (N.D. Cal.) (the "Securities Class Action"), ECF No. 1.

On October 18, 2024, the lead plaintiffs in the Securities Class Action filed a Third Amended Class Action Complaint for Violations of the Federal Securities Laws against CareDx (as well as Peter Maag and Reginald Seeto, both of whom are Defendants in the Actions). *See* Securities Class Action, ECF 132. On February 18, 2025, the Court denied Defendants motion to dismiss. *See* Securities Class Action, ECF 154. The Securities Class Action reached a settlement, which was preliminarily approved on July 22, 2025. *See* Securities Class Action, ECF 185. On December 4, 2024, the Court granted final approval for the settlement of the Securities Class Action for $20.25 million. *Id.*, ECF 198 at 1, 12.

### D.    Settlement Negotiations

Prior to engaging in a mediation session, Plaintiffs sent CareDx a written demand that included proposed corporate governance reforms and proposals to CareDx. ECF 63 at 14. The parties engaged in a mediation session before the Hon. Gary Feess (Ret.) of Phillips ADR

Enterprise on April 1, 2025. *Id.* Following mediation, and over the course of several months, the parties engaged in negotiations in an effort to resolve the pending actions. *Id.* In July 2025, the parties reached an agreement in principle on the material terms of the settlement, consisting of the corporate governance reforms (the "Corporate Governance Reforms") that CareDx will implement and maintain for at least four years. *Id.* at 15.

On September 9, 2025, the parties participated in a mediation session before Jed D. Melnick, Esq. to mediate the attorneys' fee to be paid to Plaintiffs' Counsel for achieving "substantial benefits" to CareDx. *Id.* The mediation session was unsuccessful. Plaintiffs' Counsel intends to make a Fee and Expense Application with the Court, should the Settlement be preliminarily approved. *Id.* Defendants intend to oppose the Fee and Expense Application. *Id.*

After continuing to negotiate over the following months, the Parties turned to Mr. Melnick in a final attempt to avoid a contested fee application. ECF 64, Declaration of Daniel Tepper ("Tepper Decl."), ¶¶5–6. With Mr. Melnick's help, on March 31, 2026, the Parties agreed that CareDx will not oppose Plaintiff's Counsel's Fee and Expense Application in the amount of $600,000. *Id*.

**II.    TERMS OF THE SETTLEMENT AGREEMENT**

Under the terms of the Settlement Agreement, CareDx must maintain a series of Corporate Governance Reforms for at least four years. These reforms, listed below, seek to ensure long term benefits to CareDx's practices and corporate culture.

> **Audit Committee Enhancement**: CareDx's Audit Committee shall conduct executive sessions on no less frequently than a quarterly basis with the Company's external auditor, Sarbanes-Oxley Act Compliance lead, and Chief Financial Officer ("CFO") to discuss any topics relevant to fulfilling its responsibilities, including, as applicable: (i) operations, enterprise risks, and compliance matters that may have a material impact on the Company's operational performance, financial health, balance of risk, stability, or liquidity; and (ii) any other matter required to be disclosed under state and federal securities laws and regulations, soliciting input, as needed, from the Disclosure Committee (defined below).

> **Disclosure Committee**: The Company shall create a management-level disclosure committee (the "Disclosure Committee") consisting of the Chief Executive Officer ("CEO"), CFO, General Counsel, Chief Medical Officer, and Vice President of Corporate Communications, to provide strategic oversight of the Company's

United States District Court
Northern District of California

external communications, including the implementation of a structured process for review of all public disclosures such as earnings transcripts, SEC filings, press releases, investor presentations, scientific publications, and corporate communications, to ensure alignment to strategic objectives and compliance with applicable law. The Disclosure Committee shall also meet with functional leaders that are not members of the Committee, as necessary, to establish clear communications of strategic objectives and assess strategic communications planning with respect to public reporting on matters that have a potential impact on customers, investors, media, and the general public. The Disclosure Committee shall meet not less than quarterly, and the chairman of the Disclosure Committee (or designee thereof) shall report to the full Board not less than quarterly.

**Compliance Review**: The Company shall engage outside counsel by no later than the end of the first fiscal quarter of 2026 to provide an independent compliance assessment, focusing, in particular, on the Company's compliance with applicable health care fraud statutes, including the False Claims Act, Stark Law, and Anti-Kickback Statute. As part of this assessment, counsel shall recommend any necessary compliance-related reforms and enhancements. The Company shall provide a budget of $250,000 for this assessment. Following this assessment, the Company shall use its reasonable best efforts to implement these enhancements and provide for an annual budget for the fiscal years 2027 and 2028 of not less than $250,000 per year in connection with the implementation and monitoring of the enhancements and related compliance and risk mitigation initiatives. The Company shall update the full Board concerning the status of the compliance review as part of the General Counsel's Quarterly Compliance Report (discussed below).

**Annual Risk Assessment**: The Company, with the participation and oversight of the General Counsel or his or her designee, shall, on an annual basis, conduct a risk assessment and report to the Board of Directors any material risks to the Company, including any material risks related to compliance with applicable laws and regulations, and identify actual and potential steps to mitigate material known risks.

**Executive Training**: The Company shall require annual training for officers and directors on risk assessment, compliance with laws and regulations governing public disclosures by the company, legal and regulatory updates pertinent to their responsibilities, and healthcare compliance matters (including relevant healthcare laws and regulations and best practices for sales, marketing, and billing).

**Quarterly Compliance Report**: The General Counsel shall, on a quarterly basis, provide updates to the Board of Directors on the continued development and work of CareDx's compliance program.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 23.1, "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c).

Rule 23, in turn, "governs a district court's analysis of the fairness of a settlement of a shareholder derivative action." *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 12-cv-06003, 2015 WL 1153864, at *3 (N.D. Cal. Mar. 13, 2015); *see also In re Cadence Design Sys., Inc. Sec. Litig.*, No. 08-cv-4966, 2011 WL 13156644, at *2 (N.D. Cal. Aug. 26, 2011) ("Within the Ninth Circuit, Rule 23's requirements for approval of class action settlements apply to proposed settlements of derivative actions" (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995))). Accordingly, "[c]ourts considering settlements of derivative actions have generally found '[c]ases involving dismissal or compromise under Rule 23(e) of nonderivative cases ... relevant by analogy." *Lloyd v. Gupta*, No. 15-cv-04183-MEJ, 2016 WL 3951652, at *4 (N.D. Cal. July 22, 2016) (second and third alterations in original) (quoting 7C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1839 (3d ed. 2007)).

A court may approve a proposed derivative litigation or class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) ("At the preliminary approval stage, 'the settlement need only be potentially fair.'"). The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The purpose of the rule "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). The proposed settlement must be "taken as a whole, rather than the individual component

United States District Court
Northern District of California

6

parts," in the examination for overall fairness. *Hanlon*, 150 F.3d at 1026. Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." *Id*. (citation omitted).

## IV.    DISCUSSION

### A.    The Proposed Settlement Warrants Approval

The Settlement Agreement is granted approval pursuant to Rule 23.1(c). Based upon the information before the Court, the Settlement Agreement falls within the range of possible approval as fair, adequate, and reasonable, and there is a sufficient basis for notifying shareholders and for setting a Settlement Hearing. Below, the Court addresses (1) the fairness, adequacy and reasonableness of the settlement terms, (2) the nature of the negotiations leading to the settlement, (3) the adequacy of the notice to shareholders.

#### i.    The Settlement Agreement Appears Fair, Reasonable and Adequate

Plaintiffs argue that the Settlement should be approved because the Settlement (1) provides substantial benefits to CareDx and its stockholder, and (2) the Settlement protects CareDx from further uncertain litigation and reduces the fees and associated costs of future motion practice and trial. ECF 63 at 19, 22–23.

Consistent with Rule 23's instruction to consider "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in this circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation," *Hanlon*, 150 F.3d at 1026. In addition, though not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement is expected to provide to [the company] is a central concern." *In re Wells Fargo & Co. Sharehold Derivative Litig*., No. 16-cv-05541, 2019 WL 13020734, at *5 (N.D. Cal. May 14, 2019). "In the context of shareholder derivative litigation, several [] factors . . . inform the Court's evaluation of whether settlement is fair, reasonable, and adequate: (1) the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial; (2) the likelihood of success in light of the risks posed by continued litigation; (3) the likely duration and cost of continued litigation; and (4) any shareholder objections to proposed settlement." *Lloyd v. Gupta*, 2016 WL 3951652, at *6 (N.D. Cal. July 22, 2016).

Below the court assesses the benefit the settlement terms confer on CareDx and the risk, expense, and uncertainty of litigation to decide whether the "the settlement of the claims on the agreed upon terms is 'within the range of possible approval.'" *NVIDIA Corp.*, 2008 WL 5382544, at *2.

### a.   The Settlement Agreement Confers Substantial Benefits on CareDx

The parties agree that the Corporate Governance Reforms articulated in the Settlement confer substantial benefits on CareDx, which merits preliminary approval of the Settlement.  ECF 63 at 19.

"The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128, 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008); *see In re Lyft, Inc. Derivative Litig.*, No. 20-cv-09257, 2024 WL 4505474, at *4 (N.D. Cal. Oct. 16, 2024) (same).  Therefore, Court first addresses the degree to which the Settlement Agreement "confers a substantial corporate benefit." *In re Oracle Sec. Litig.*, 852 F. Supp. at 1445.  Notably, corporate governance reforms have been recognized as providing benefits for public companies.  *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970) ("[A] corporation may receive a 'substantial benefit' from a [stockholders' action]…regardless of whether the benefit is pecuniary in nature[,]" because "corporate therapeutics…furnish a benefit to all shareholders by providing an important means of enforcement of [a corporation's director and officer obligations]."); *see also Lewis v. Anderson*, 692 F.2d 1267, 1271 (9th Cir. 1982) (corporate governance reforms can be "sufficiently beneficial to a corporation"); *NVIDIA Corp.*, 2008 WL 5382544, at *3 (corporate governance reforms provide valuable benefits to companies).

As a preliminary matter, it is important to reiterate that the Settlement Agreement does not provide any monetary compensation to CareDx or its shareholders.  Instead, the Settlement Agreement requires CareDx to adopt certain corporate governance reforms and keep those reforms—and other reforms—in place for a four-year period.  The Corporate Governance Reforms require CareDx to (i) create a management-level Disclosure Committee to provide strategic

United States District Court
Northern District of California

8

United States District Court
Northern District of California

oversight of the Company's external communications; (ii) engage in an independent compliance assessment to be performed by outside counsel, with a focus on the Company's compliance with applicable healthcare laws; (iii) implement enhancements to the responsibilities of the Audit Committee; (iv) engage in an annual risk assessment to identify and mitigate material known risks to the Company; (v) participate in annual training for officers and directors on specific topics relevant to the alleged wrongdoing; and (vi) provide quarterly updates from the General Counsel to the Board of Directors (the "Board") regarding the continued development and work of the Company's compliance program.  ECF 68-3.  These reforms address the alleged wrongdoing by increasing transparency and accountability within the company's practices and procedures.  *In re Immunitybio, Inc. S'holder Derivative Litig.*, 2025 WL 2147066, at *5 (S.D. Cal. July 29, 2025) (finding non-pecuniary corporate reforms would benefit the company "because they directly address the alleged deficiencies listed in Plaintiffs' derivative actions.").  Moreover, the Court also finds that the terms of the Settlement which requires CareDx to maintain these reforms for at least four years, thereby increases the probability that the reforms will confer a benefit onto the company.  *See In re Lyft, Inc. Derivative Litig.*, No. 20-CV-09257-HSG, 2024 WL 4505474, at *4 (N.D. Cal. Oct. 16, 2024) (finding that the decision to "fix these reforms in place for a three-year period' would assure that the "reforms [were] not immediately revocable"); *Chenoy v. Lyft, Inc.*, No. 20-CV-09257-HSG, 2025 WL 948065, at *5 (N.D. Cal. Mar. 28, 2025) ("Because the Settlement Agreement fixes these reforms in place for a three-year period, the reforms may well engender some lasting trust in Lyft's safety and corporate governance, yielding financial benefits for Lyft."); *In re Immunitybio*, 2025 WL 2147066, at *6 ("The Court agrees that the multi-year implementation period would be beneficial to the company.").

Accordingly, the Court finds that the substantial and lasting benefits conferred by the Corporate Governance Reforms demonstrate that the Settlement is "fair, reasonable and adequate to all concerned[,]" and "within the range of possible approval."  *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982).

**b.  The Likely Success, Cost and Duration of Continued Litigation Favor Approval**

Plaintiffs argue that the uncertain outcome and the risk of any litigation, especially in complex stockholder litigation such the Derivative Action and the Burns Action, as well as the difficulties and delays inherent in such litigation are factors which weigh in favor of approving the Settlement.  ECF 63 at 22.  Plaintiffs emphasize that nothing has changed since the Court previously analyzed this issue.  *Id.*

In assessing whether the terms of the Settlement are fair, reasonable, and adequate, the Court must consider, among other things, "the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial," "the likelihood of success in light of the risks posed by continued litigation," and "the likely duration and cost of continued litigation."  *Lloyd v. Gupta*, 2016 WL 3951652, at *6.

Here, without the settlement Defendants would likely move to dismiss the pleadings on the grounds of demand futility, and if Plaintiffs were to defeat such a motion, the Parties would need to engage in costly discovery, followed by time-consuming briefing of summary judgment motions and eventual trial, all of which would be expensive and protracted, as well as disruptive to the Company, with an uncertain net benefit.  *See e.g., In re FAB Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 281-82 (S.D.N.Y. 2015) ("The doctrine of demand futility … make[s] shareholder derivative suits an infamously uphill battle for plaintiffs.").  The Settlement "eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation."  *NVIDIA Corp.*, 2008 WL 5382544, at *3.  In derivative litigation, these risks are especially high, because "derivative lawsuits are rarely successful."  *Id*. at *12.  The cost of continued litigation and risk of no recovery at the end of litigation balance in favor of approving the Settlement.

Accordingly, the terms of the Settlement appear to be adequate, considering the costs, risks, and delay of trial and appeal.

### ii.    The Settlement Process Satisfies the Requirements of Fed. R. Civ. P. 23(e)(2)(A)–(B).

Plaintiffs argue that the litigants are represented by zealous and able counsel with extensive experience in complex derivative litigation, and who have unique insight into the legal

10

and factual issues presented.  ECF 63 at 25.

In the class action context, the Court must consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B); *See also Lloyd v. Gupta*, No. 15-CV-04183-MEJ, 2016 WL 3951652, at *4 (N.D. Cal. July 22, 2016) (internal citation and quotations omitted) (noting that courts consider whether "the settlement is the result of arm's-length negotiations in which plaintiffs' counsel has effectively represented the interest of the shareholder class, and whether the substantive terms of the settlement are in the interests of [the company] and its shareholders relative to the likely rewards of litigation.").

### a. The Class Representatives and Class Counsel Have Adequately Represented the Class

Like class representatives, "a stockholder who brings suit on a cause of action derived from the corporation . . . sues, not for himself alone, but as representative of a class comprising all who are similarly situated." *Hu v. Baker*, No. 4:23-CV-02077-KAW, 2025 WL 2419265, at *6 (N.D. Cal. Aug. 21, 2025) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949)).  Accordingly, Plaintiffs and their counsel must "prosecute the action vigorously on behalf of the [shareholders]." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

Here, Plaintiffs' counsel, including counsel for Burns, have engaged in significant investigative efforts to pursue this litigation.  ECF 62 at 13–14.  Counsel has (i) reviewed and analyzed the Company's public filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, announcements, transcripts of conference calls, and news articles; (ii) reviewed securities analyst, business, and financial media reports about the Company; (iii) pursued and subsequently reviewed the Company's internal books and records pursuant to Section 220; (iv) reviewed court filings and contacting counsel in related actions including the Securities Class Action and the whistleblower action styled as *U.S. v. CareDx, Inc.*, Case No. 1:21-cv-00774 (E.D.N.Y.); (v) kept up to date with government investigations including by the U.S. Department of Justice and the SEC; (vi) researched the applicable law with respect to the claims asserted (or which could be asserted) in the respective Actions and the potential defenses thereto; (vii)

United States District Court
Northern District of California

researched, drafted, and filed derivative complaints; (viii) researched corporate governance best practices necessary to address alleged internal control weaknesses; and (ix) engaged in settlement discussions with counsel for the Defendants. ECF 62 at 13–14. Counsel for the parties appear to have engaged in fact intensive investigations to participate in informed settlement negotiations. *Id.* Under these circumstances, the Court is satisfied that they possessed "sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (citation omitted).

Accordingly, this factor weighs in favor of approval.

### b. The Settlement Agreement is the Product of Arm's-Length Negotiations

Next, the Court considers how the parties arrived at the settlement, specifically whether the settlement was "the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009). Plaintiffs argue that the Settlement is the product of extensive, arm's-length negotiations among the parties to this litigation. ECF 63 at 14–15.

When a settlement was reached after "well-informed, arms-length negotiation" a settlement is "entitled to a presumption of fairness." *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *8 (C.D. Cal. Jul. 28, 2014); *Villanueva v. Morpho Detection, Inc.*, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015) ("'An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.'"); *see also Free Range Content, Inc.*, No. 14-cv-2329, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) (cleaned up) ("[A] presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.").

As the Court noted, the Parties participated in multiple mediation sessions – one concerning the settlement consideration and one for attorneys' fees and expenses. This supports the non-collusive nature of the negotiations. *Hu v. Baker*, 2025 WL 2419265, at *6 (N.D. Cal. Aug. 21, 2025) (finding "arms-length, non-collusive, negotiated resolution" when a mediator supervises "multiple sessions of negotiations"). Specifically, the settlement negotiations were aided by experienced the Hon. Feess, a retired United States District Court Judge for the Central

12

District of California with years of experience mediating shareholder derivative actions and related fee awards and Jed D. Melnick, Esq., a nationally regarded mediator with JAMS. *See In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (Melnick's role as mediator confirms no collusion); *Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022) (same). Moreover, the negotiations were carried out over the course of several months between the Parties and their respective counsel. *See* Tepper Decl., ¶¶5–6; 56, ECF 56 ¶¶15–16. Counsel on both sides have experience in the field of derivative litigation and have utilized their experience when negotiating for the proposed terms here. ECF 64; *see Moore v. Verb Tech. Co., Inc.*, 2021 WL 11732976, at *6 (C.D. Cal. Mar. 1, 2021) (finding settlement "is the product of serious, informed, non-collusive negotiations performed at arm's-length" when counsel "are experienced litigators in this field, have worked on this case at length, and have an understanding of its risks[.]").

Accordingly, the record shows that the settlement was the product of "serious, informed, non-collusive negotiations," and does not indicate collusion, or self-dealing. *See Hu*, 2025 WL 2419265, at *5 (preliminarily approving derivative settlement where supervised negotiations resulted in settlement) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

### iii.    The Parties Provided Reasonable Notice to Shareholders

Rule 23.1(c) requires that notice of the settlement "be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). This requirement "guards against collusive settlement practices." *Bushansky v. Armacost*, No. 12-cv-01597, 2014 WL 2905143, at *1 (N.D. Cal. June 25, 2014). More specifically, "notice and court approval of settlements under Rule 23.1 discourage private settlements under which the plaintiff-stockholder and his attorney profit to the exclusion of the corporation and nonparty stockholders." *Chenoy v. Lyft, Inc.*, No. 20-cv-09257, 2025 WL 948065, at *4 (N.D. Cal. Mar. 28, 2025) (citation omitted). In determining the appropriate notice method, "the Court considers whether such notice would be sufficient to reach the majority of interested stockholders." *Bushansky*, 2014 WL 2905143, at *6; *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 517 (N.D. Cal. 2020),

13

United States District Court
Northern District of California

aff'd, 845 F. App'x 563 (9th Cir. 2021) (same).  Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

On December 9, 2025, the Court preliminarily approved the proposed Settlement and ordered CareDx to provide notice of the Settlement to CareDx stockholders. ECF No. 62. As directed therein, by December 23, 2025, CareDx: (i) published the Summary Notice in The Wall Street Journal and transmitted the Summary Notice by wire service; (ii) filed the Notice and Stipulation with the SEC in a Form 8-K; and (iii) published the Notice and Stipulation on CareDx's investor relations website. Tepper Decl., ¶3.  The Notice and Summary Notice both include factual background about the litigation, the terms of the Settlement Agreement, the time and date of the final approval hearing, and the process by which shareholders can object to the Settlement Agreement.  *See* ECF 68-2, Ex. 2.  CareDx will pay for the costs of publishing and posting notice. ECF 71.

The Court finds that the executed notice plan was constitutionally sound in that plaintiffs have made a sufficient showing that it is: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise shareholders of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law.

First, the Notice sufficiently informed recipients about the terms of the Settlement Agreement and the derivative nature of the litigation, including the fact that there is no claims process and no individual stockholder has the right to be compensated as a result of this Settlement Agreement.  *See* ECF 68-2, Ex. 2; ECF 68-3.  *See In re Lyft, Inc. Derivative Litig.*, No. 20-cv-09257, 2024 WL 4505474, at *3 (N.D. Cal. Oct. 16, 2024) (preliminarily approving contents of notice that "summarizes: the litigation to date, the proposed corporate governance reforms, the release provisions, the proposed attorneys' fee award").  The Notice and Summary

Notice also include the date and time of the final approval hearing and describe the process by which CareDx stockholders may appear at the hearing and/or file objections to the proposed settlement.  See ECF 68-2, Ex. 2; ECF 68-3.  *See In re Hewlett-Packard Co. S'holder Derivative Litig.*, 716 F. App'x 603, 609 (9th Cir. 2017) (affirming approval of notice that contained "explanation of shareholder's right to object, the deadline for objecting, and the right to appear at the final approval hearing").

Second, the Court finds that the distribution of notice was reasonably calculated to reach shareholders.  *See In re Lyft*, 2024 WL 4505474, at *3 (preliminarily approving notice plan whereby summary notice posted once in *Investor's Business Daily*, summary notice published once over *PR Newswire*, and settlement and Notice published on defendant's investor relations website).  Courts in this district often find that similar notice distribution procedures satisfy Rule 23.1 and due process.  *See Hu*, 2025 WL 2419265, at *9 (approving notice plan that includes posting notice on investor relations webpage, publishing via wire service, and filing Form 8-K with SEC); *id* (citing similar cases).

The notices were sufficient to inform shareholders about the terms of the Settlement Agreement, their rights to object to or comment on the Settlement Agreement, and the date and location of the Settlement Hearing.  *See Churchill Vill*., 361 F.3d at 575 ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

### iv.    Shareholders Objections to the Settlement

"[T]he reaction of the class to the proffered settlement is perhaps the most significant factor to be weighed in considering its adequacy[.]" *In re Rambus Inc. Derivative Litig*., 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009). Indeed, the "lack of objections" to the settlement "may well evidence [its] fairness[.]" *In re AOL Time Warner S'holder Derivative Litig*., 2006 WL 2572114, at *6 (S.D.N.Y. Sept. 6, 2006).

As set forth above, the Notice of the Settlement was disseminated to the Company's stockholders in accordance with notice program set forth in the Preliminary Approval Order at

ECF 62. *See* ECF 68. The Notice informed the Company's stockholders that the deadline to object to the proposed Settlement is June 9, 2026. ECF 63 at 27. Counsel did not receive any objections, and no objections were filed on the Court's docket. Tepper Decl., ¶5. This factor weighs heavily in favor of final approval of the Settlement. See MRV, 2013 WL 2897874, at *5 (final approval of shareholder derivative settlement supported where plaintiffs "[were] not aware of a single objection to any aspect of the Settlement.").

### v.     Plaintiffs' Fees, Expense Award, and Service Awards is Reasonable

Under the "substantial benefit" doctrine, counsel who prosecute a shareholder derivative action that results in a substantial benefit for the corporation are entitled to an award of reasonable attorneys' fees and expenses. *Mills*, 396 U.S. at 394-96; *See Hunt v. Bloom Energy Corp.*, No. 19-cv-02935, 2024 WL 1995840, at *8 (N.D. Cal. May 6, 2024) (holding that the first and most critical factor in assessing an attorneys' fee request is "the degree of success obtained") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)); *see also Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023) ("The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class."). Courts also review the efforts of the attorneys in securing the benefit. *See Sheet Metal Workers' Nat'l Pension Fund v. Bayer Aktiengesellschaft*, No. 20-cv-04737, 2025 WL 3034317, at *3 (N.D. Cal. Oct. 30, 2025) (recognizing the efforts of Lead Counsel in undergoing discovery, depositions, negotiations in a securities action "on a purely contingent basis and advancing all necessary expenses over the course of five years without any certainty that they would be compensated"). *Hunt*, 2024 WL 1995840, at *8 (approving attorneys' fees award where "counsel conducted an extensive investigation, engaged in substantial and voluminous fact discovery, and defended against three simultaneous motions to dismiss"). Finally, lack of objections can support approval of attorneys' fees request. *See Sheet Metal Workers*, 2025 WL 3034317, at *3 (approving award where, even after objection deadline, lead counsel had not received any objections to fee request).

First, for all of the reasons discussed above, the Court finds that Corporate Governance Reforms confer a substantial benefit upon CareDx and its stockholders. The parties agree. ECF 63 at 27. Second, the record reflects that the attorneys contributed significant time and effort to the

16

resolution of this case. These factors weigh heavily in favor of approving the parties' reasonable attorneys' fees request. Finally, the Court notes that, to date, the parties have not received any objection to the settlement. The fact that the deadline for filing objections has passed also weighs in favor of approving the requested award.  Attached to the last page of this order is a breakdown of the unreimbursed litigation expenses incurred by the law firms that worked to reach this settlement. The Court further notes that the request for $554,251.12 in attorneys' fees results in a recovery of 51.56% of Plaintiffs' counsel's combined lodestar which totaled to $1,074,980.50. ECF 70. Stated differently, the requested overall Fee and Expense Amount results in a fractional lodestar multiple of 0.515.

For the reasons discussed above, and recited in open Court on June 30, 2026, the Court finds Plaintiffs' requested attorneys' fees, expense award, and service awards is reasonable.

## V.    CONCLUSION

Based upon the foregoing, the motion for final approval of settlement is **GRANTED**. The motion for attorneys' fees, expenses, and service awards is **GRANTED** as follows:

1. The Court grants final approval of the settlement agreement.

2. The Court awards Plaintiff's Counsel $554.251.12 in attorneys' fees.

3. The Court awards Plaintiff's Counsel litigation costs up to $39,748.88.

4. The Court awards the named individual plaintiffs Jeffery Edleman, Jayson Stevenson, Christian Jacobsen, and Edward Burns, service awards, in the amount of $1,500.00 each. As such, the service awards total $6,000.00.

5. The Court adopts and incorporates the terms and conditions contained in the joint proposed order and final judgment proffered by the parties, except as modified herein. ECF 63-1. The Corporate Governance Reforms at ECF 68-3 are hereby incorporated into this Order.

6. A status hearing is scheduled for October 29, 2026, at 3:00 p.m. via videoconference.

7. Absent good cause, a compliance hearing shall be held, in person, on December 15, 2026, at 2:00 p.m.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that final judgment is ENTERED in accordance with the terms of the Settlement, the Order Granting Plaintiffs'

Unopposed Motion for Preliminary Approval of Settlement as modified and this order.

This document will constitute a final judgment for purposes of Rule 58, Federal Rules of Civil Procedure. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

This order resolves ECF 63.

**IT IS SO ORDERED.**

Dated: July 3, 2026

_____
TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

18

**Table of Plaintiffs' Counsel's Unreimbursed Litigation Expenses**

**Levi & Korsinsky, LLP[1]**

| | |
|---|---|
| Mediation Fees | $2,218,75 |
| Filing Fees | $1,681.00 |
| Transportation | $77.52 |
| **Total Levi & Korsinsky, LLP:** | **$3,977.27** |

**The Rosen Law Firm, P.A.[2]**

| | |
|---|---|
| Online Legal Research and Document Retrieval Fees | $874.19 |
| Court Filing Fees | $402.00 |
| *Pro Hac Vice* Fees | $656.00 |
| Mediation Fees | $14,237.06 |
| Service of Process Fees | $100.00 |
| Notice to Investors Fees | $8,597.43 |
| Travel, Transportation, Hotels, and Meals * includes estimated costs for traveling to and from the Settlement hearing. | $4,505.89 |
| **Total The Rosen Law Firm, P.A.:** | **$29,372.57** |

**Bragar Eagel & Squire, P.C.[3]**

| | |
|---|---|
| Filing fees and Travel expenses | $522.09 |
| **Total Bragar Eagel & Squire, P.C.:** | **$522.09** |

**Rigrodsky Law, P.A.[4]**

| | |
|---|---|
| Delivery/Messenger | $125.00 |
| Court Fees | $1,314.45 |
| Mediation | $4,437.50 |
| **Total Rigrodsky Law, P.A.:** | **$5,876.95** |
| **GRAND TOTAL:** | **$39,748.88** |

[1] *See* ECF No. 64 at ¶ 12.
[2] *See* ECF No. 64-2 at ¶ 7.
[3] *See* ECF No. 64-3 at ¶ 7.
[4] *See* ECF No. 64-4 at ¶ 7

United States District Court
Northern District of California